UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EPHREN W. TAYLOR, II, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-2513 (ABJ) |
| EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

In this action filed *pro se* against the Executive Office for United States Attorneys ("EOUSA"), plaintiff, a federal prisoner, claims that EOUSA improperly withheld records pertaining to his criminal case in violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In the pending renewed motion for summary judgment, defendant has clarified the record with respect to thousands of potentially responsive pages, *see* Mem. Op. and Order at 5, Dkt. # 67 ("Mem Op. II"), and demonstrated full compliance with the FOIA. Therefore, the court will grant defendant's motion for the reasons explained more fully below.

**BACKGROUND**

As set out previously, Mem. Op. II at 1-2, plaintiff pled guilty in the United States District Court for the Northern District of Georgia to conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349. In October 2017, plaintiff requested from EOUSA records pertaining to his plea negotiations with the U.S. Attorney's Office in the Northern District of Georgia ("USAO-GAN"), specifically:

> a. Any and all electronic and written or recorded notes, minutes, memoranda detailing discussions of plea negotiations between Christopher Bruno, Jane Bruno and/or Linda Sheffield and the U.S. Attorney's Office for the Northern District of Georgia, Atlanta Division between the dates of January 1, 2012 and November 30th, 2014.
>
> b. Name, job title, contact information for all AUSA assigned to the criminal case previous to the assignment of Christopher Hubert to the criminal case of the United States v. Ephren Taylor specifically during the years of 2012, 2013, and 2014.
>
> c. Any and all meeting notes, discussions, recordings of meetings held at the Northern District of Georgia, Atlanta Division offices, between counsel(s) for defendant Ephren Taylor and any staff/AUSA from the years 2012, 2013 and 2014 in their entirety.
>
> d. Any and all copies or notations of any/all plea proffers presented, contemplated, offered to Christopher Bruno, Jane Bruno or Linda Sheffield by prosecuting AUSA from the U.S. Attorney's office for the Northern District of Georgia, Atlanta Division.

Following electronic and physical searches of the USAO-GAN's files, EOUSA was provided "over 1,569 emails with attachments, totaling 11,335 pages of potentially responsive records." 1st Supp. Decl. of Ebony Griffin ¶ 12, Dkt. # 57-3 at 1-10. It "reviewed 500 pages monthly and made two interim releases." *Id*. ¶ 15. EOUSA withheld information under FOIA exemptions 6 and 7(C), codified in 5 U.S.C. § 552(b). *Id*. Following a supplemental search, EOUSA released on April 26, 2023, three additional email pages that were located in the USAO-GAN's "physical criminal case file" separate from "the email records originally retrieved from Microsoft Outlook." 2nd Supp. Decl. of Ebony Griffin ¶¶ 11-12, Dkt. # 70-3. It redacted from those pages third-party identifying information under FOIA exemptions 6 and 7(C). *Id*., Ex. B (*Vaughn* Index).

In total, EOUSA processed "11,338 email pages," nine of which "were actually responsive to the request." 2nd Supp. Griffin Decl ¶ 13. As "a courtesy to Plaintiff," moreover, EOUSA responded to his inquiry in a letter received during the course of this litigation by mailing him his

2

July 10, 2012 six-page executed agreement with the U.S. Securities and Exchange Commission (SEC), downloaded from the federal courts' Public Access to Court Electronic Records (PACER) system.  2nd Supp. Griffin Decl ¶¶ 10, 13; 1st Supp. Griffin Decl. ¶ 17.

## ANALYSIS

The Court denied the defendant's first motion for summary judgment because defendant had not accounted for more than 11,300 pages of potentially responsive records.  Mem. Op. II at 4-5.  Ebony Griffin, the EOUSA Attorney-Advisor who for nearly two years conducted the monthly reviews, attests now that although the USAO-GAN "uploaded over 1569 emails with attachments totaling 11,335 pages" only six pages were identified as responsive to plaintiff's request.  2nd Supp. Griffin Decl. ¶¶ 6-7; *see id*. ¶ 7 (confirming that the "remaining 11,329 pages [were] determined to be non-responsive to the FOIA request").  With this clarification, the court turns to the merits of the case.

The FOIA confers in the district court jurisdiction to compel an agency to release improperly withheld information.  An improper withholding occurs when the agency fails to show "that the information withheld logically falls within [a] claimed exemption," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), or conducts an inadequate search for responsive records, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325-26 (D.C. Cir. 1999).  Defendant bears the ultimate burden of proving that it has released all non-exempt responsive information, which is typically achieved on summary judgment through non-conclusory declarations.  *See* Mem. Op. II at 3-4 (discussing legal standard).  Plaintiff challenges defendant's search for records, *see generally* Pl.'s Renewed Opp'n to Def.'s Mot. for Summ. J., Dkt. # 78, and claimed exemptions, *see* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 3, Dkt. # 60.

**A. Defendant's Search for Responsive Records**

"Agencies have the discretion to construe requests reasonably and conduct flexible and targeted searches within their internal records systems." *Kowal v. United States Department of Justice*, 107 F.4th 1018, 1028 (D.C. Cir. 2024). The D.C. Circuit has explained that in order to obtain summary judgment, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To this end, an agency may submit "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020).

"The court applies a reasonableness test to determine the adequacy of search methodology . . . consistent with the congressional intent tilting in favor of disclosure." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal quotation marks omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982); *see Kowal*, 107 F.4th at 1027 (since "a reasonable and thorough search may still miss records, the focus is on the process, not the results, when determining the adequacy of a FOIA search") (cleaned up)). Thus, an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

Griffin describes in sufficient detail four searches the USAO-GAN conducted.  *See* 2nd Supp. Griffin Decl. ¶¶ 15-18, incorporating Decl. of Diana Todd, Dkt. # 57-3 at 44-47.  An initial search of the USAO-GAN's CaseView system identified the criminal case number and the prosecuting attorney, Assistant United States Attorney (AUSA) Chris Huber.[1]  Although Huber's initial review of the "physical case file" located no responsive records, "an email search of [his] Microsoft Outlook account" utilizing plaintiff's name and criminal case number, the "case number for a SEC lawsuit against [plaintiff] in the Northern District of Georgia," and the number of this civil action located the thousands of pages discussed above, which between August 2020 and May 2022 Griffin reviewed "on an interim monthly basis for responsiveness and processed the few [responsive] pages."  2nd Supp. Griffin Decl. ¶¶ 7, 15-16; *see* Todd Decl. ¶ 10 ("A search was conducted through CaseView using the search terms Ephren Taylor and U.S. Securities & Exchange Commission" and "[a]nother search was conducted through PACER via case numbers 1:14-CR-217 and 1:18-CV-2513 and 1:12-CV-1249.").  In response to plaintiff's initial opposition to summary judgment, AUSA Huber again reviewed the physical case file and located "three email pages responsive to Item d of the request," *see supra* at 1, which "contained new portions of an email chain from emails that were previously processed and released" to plaintiff.  2nd Supp. Griffin Decl. ¶ 15.

---

[1] CaseView "is used to track, civil, criminal, and appellate investigations, cases and matters within USAO for the Northern District of Georgia based on parties' name, USAO case jacket number, and Court case docket number."  Decl. of Yvette Comer ¶ 6, Dkt. # 57-3.  *See also Brown v. Executive Office for United States Attorneys*, 2021 WL 3472382, at *6 (D.D.C. Aug. 5, 2021) (describing "CaseView as the general repository system for U.S. Attorney's Offices to track cases opened in their districts and to determine the location of all physical case files") (internal record citation and quotation marks omitted)).

Griffin has described a search tailored to locate records responsive "to each specific item of the request," *id.*, which was reasonably interpreted as seeking "records of specific communications between plaintiff's attorneys and the USAO-GAN, concerning Criminal Case No. 1:14-CR-217-WSD-AJB," *id*. ¶ 14.  Todd, who is that office's legal assistant and FOIA contact, confirms AUSA Huber as the most likely source for information since he (1) has "handled" plaintiff's criminal case "from inception," (2) maintains "physical custody of the paper records," (3) has "no additional records pertaining to this request," and (4) is the only attorney or staff member at USAO-GAN who has "records pertaining to this FOIA request."[2]  Todd. Decl. ¶¶ 1, 6-7, 11.

Plaintiff asserts that defendant's search was inadequate because it failed to "locate documents that were requested despite [the existence of] copies or partial copies of the documents."  Renewed Opp'n at 1, citing Dkt. ## 60 and 70, Exhibits A-H.  He posits that defendant ignored "positive indication[s] of overlooked materials" and that the "leads" can be no "more obvious than copies of the actual emails themselves."  *Id*. at 2.

These arguments are not persuasive.  Since EOUSA's disclosure obligations extend "only to those documents that it both (1) creates or obtains and (2) controls at the time the FOIA request is made," *Judicial Watch, Inc. v. U.S. Secret Service*, 726 F.3d 208, 216 (D.C. Cir. 2013) (cleaned up), the fact that requested documents exist elsewhere is immaterial.  *See, e.g.,* Def.'s Reply at 3, citing Pl.'s  Ex. A, Dkt. 60-2 at 3-4 (plausibly asserting that notes taken by plaintiff's attorneys of a meeting in June 2012 "[do] not support the inference that EOUSA would have had possession" of them); *cf. Kowal*, 107 F.4th at 1028 (an agency component responding to a FOIA request for

---

[2]  Another AUSA "was technically assigned to the case but did not perform substantive work on it."  2nd Supp. Griffin Decl. ¶ 15, Item b, citing Todd Decl. ¶ 6 (identifying co-counsel assigned briefly to handle "possible forfeiture" that did not occur).

6

investigative records is "not required to do more" than search its own "criminal investigation databases based on [the] specific records request"). And although an agency "must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry," *Campbell*, 164 F.3d at 28, it "is not required to speculate about potential leads" nor entertain a requester's speculation. *Kowal*, 107 F.4th at 1028, quoting *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). So, plaintiff's speculation that EOUSA failed to exhaust all possible leads does not raise a materially factual dispute to preclude a judgment in defendant's favor on the demonstrably adequate search. *See supra* at 4-6; Todd Decl. ¶ 16 (concluding "that all searches have been exhausted and no further information can be located").

## B. FOIA Exemptions

As stated above, *supra* at 2, EOUSA withheld a minimal amount of information under FOIA exemptions 6 and 7(C). FOIA Exemptions 6 and 7(C) concern personal privacy interests, and they are often cited together as justification for withholding the same records. FOIA Exemption 6 exempts from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C)'s threshold of harm is lower than Exemption 6's "clearly unwarranted" requirement. Since the responsive records "were generated in preparation for, or in response to, a law enforcement investigation conducted by the USAO," 2nd Supp. Griffin Decl. ¶ 22, the Court will address only Exemption 7(C). *See DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755-56, 763-65 (1989) (comparing Exemption 7(C) and Exemption 6); *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding

7

"no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)"); *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1125 (D.C. Cir. 2004) (deeming "the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same").

In determining whether Exemption 7(C) applies to particular information, the Court must balance an individual's interest in privacy against the public interest in disclosure. *See ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011).  The privacy interest at stake belongs to the individual, not the government agency, *see Reporters Comm.*, 489 U.S. at 763-65, and an individual has a "strong interest in not being associated unwarrantedly with alleged criminal activity."  *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.' " *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992), quoting *Reporters Comm.*, 489 U.S. at 773.  It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  The D.C. Circuit has explained that

> [a]s a result of [e]xemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information . . . . [because] privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated . . . . Moreover, the Supreme Court has made clear that requests for such third party information are strongly disfavored.  That is particularly true when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution.

*Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (cleaned up).

8

Under Exemption 7(C), defendant redacted names, email addresses, and direct telephone numbers of agency employees from the nine released pages, except those of the AUSAs assigned to plaintiff's criminal case.  *See Vaughn* Index Summary, Dkt. # 70-3 at 19; 2nd Supp. Griffin Decl. ¶¶ 15, 24.  In addition, defendant redacted the personally identifying information of law enforcement agents, non-departmental government attorneys, and third-party individuals who provided information in connection with the government's investigation.  2nd Supp. Griffin Decl. ¶ 24; *Vaughn* Index Summary.

Griffin attests that "[b]ased on a line-by-line review, EOUSA has released all reasonably segregable, non-exempt information in the nine responsive pages," *id*. ¶ 29, and has adequately explained how releasing the redacted third-party information "could subject" the affected "individuals to stigma, embarrassment, harm to their reputations or careers, and potential harassment or retaliation, *id*. ¶ 25.  Similar explanations have been upheld as "sufficient." *Kowal*, 107 F.4th at 1031.  Griffin attests further that EOUSA weighed the privacy interest at stake against the public's interest and found "little if any cognizable public interest in disclosure of the information withheld because disclosure would shed little if any light on the operations or activities of the Government."  2nd Supp. Griffin Decl. ¶ 26.

Plaintiff asserts that an overriding public interest exists because of "a great public interest in the outcome of this case," the "over 400+ interested parties, victims and participants in the criminal case," and his need for information to support his post-conviction motions.  Pl.'s Opp'n, Dkt. # 60 at 3.  But plaintiff has not explained how the redacted information would better inform the citizenry about governmental operations, and his "personal stake in the release of the requested information is irrelevant to the balancing of public and third-party privacy interests required by Exemption 7(C)."  *Roth*, 642 F.3d at 1177; *see id*. (noting that "FOIA is not a substitute for

9

discovery in criminal cases or in habeas proceedings"). Absent an identifiable public interest, "the privacy interest . . . prevails because 'something, even a modest privacy interest, outweighs nothing every time.' " *Kowal*, 107 F.4th at 1031, quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

Plaintiff also asserts that "prominent media appearances by redacted agents negate any privacy interest," Pl.'s Opp'n at 3, but he has identified only AUSA Huber whose name and contact information have been released. *See* 2nd Supp. Griffin Decl. ¶¶ 15, 24. Finally, to the extent plaintiff has not abandoned his challenge under exemption (j)(2) of the Privacy Act, 5 U.S.C. § 552a, *see* Pl.'s Opp'n at 3, the issue is moot because the Privacy Act specifically excepts records required to be disclosed under the FOIA, 5 U.S.C. § 552a(b)(2), and the Act has not been "used" in this case "as a barrier to FOIA access." *Greentree v. United States Customs Serv.*, 674 F.2d 74, 79 (D.C. Cir. 1982); *see* 1st Supp. Griffin Decl. ¶ 36 (attesting to the release under FOIA of "portions of responsive records" not disclosable under the Privacy Act).

## CONCLUSION

For the foregoing reasons, the Court grants defendant's renewed motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

*[Signature: Amy B Jackson]*

DATE: September 20, 2024              AMY BERMAN JACKSON
                                      United States District Judge